UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| WILLIAM R. ROSS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:11-cv-00293-NT |
| | ) | |
| COMMISSIONER, SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant | ) | |

**RECOMMENDED DECISION**

The Commissioner dismissed William Ross's request that his claim for social security benefits be heard by an administrative law judge, concluding that the claim has already been determined and is long-expired, that no good reasons exist for reopening it, and that it is also barred by the doctrine of *res judicata*. Ross seeks judicial review, maintaining that the *res judicata* finding and the refusal to reopen were not supported by a proper "evidentiary comparison" of the records associated with his prior and current claims and that he has been denied due process. Now pending is the Commissioner's motion to dismiss the complaint on the ground that the Court lacks jurisdiction because there was never an administrative hearing. (Def.'s Mot. and Mem. in Support, Doc. 9.) Ross maintains, as part of his opposition, that his invocation of the Due Process Clause supplies a jurisdictional basis for court review. (Pl.'s Mem. in Opp'n, Doc. 10.) The Court referred the motion for report and recommendation. I recommend that the Court grant the Commissioner's motion.

## BACKGROUND

According to the Commissioner's Motion to Dismiss and the supporting memorandum, Ross's claim for disability benefits was filed in 2010 and is advanced under Title II of the Social Security Act but was dismissed as barred by *res judicata* and as barred for want of cause to reopen previously denied applications filed in 2001 and 2003. Plaintiff Ross agrees that this was the administrative disposition on his 2010 claim. Neither party has put the entire administrative record before the Court. References in Plaintiff's complaint to Exhibit 8E and Exhibit 9E are not helpful in this regard as the exhibits are not available for the Court to review, assuming that they would shed some light on the issues presented.

The Commissioner has supported his motion with the Declaration of Paul Halse, acting chief of court case preparation and review branch 2 of the Administration's Office of Appellate Operations, Office Of Disability Adjudication and Review (ODAR). (Doc. 9-1.) Mr. Halse attests to the following administrative history:

> (a) The plaintiff filed an application for Period of Disability/Disability Insurance Benefits on March 15, 2003, which was initially denied. The plaintiff's date last insured Period of Disability/Disability Insurance Benefits for this application was December 31, 1994. This denial was not further appealed (Exhibit l).
>
> (b) On December 24, 2008, the plaintiff filed a subsequent application for a Period of Disability/Disability Insurance Benefits. The date last insured remained as December 31, 1994. Following an initial and reconsideration denial of this claim, the Plaintiff timely requested a hearing before an Administrative Law Judge.
>
> (c) On January 28, 2011, an Administrative Judge issued a Notice of Dismissal, based on the doctrine of *res judicata* (Exhibit 2). A request to vacate this dismissal was submitted by the Plaintiff on February 14, 2011.
>
> (d) On February 18, 2011, an Administrative Judge issued a Notice Denying Request to Vacate Dismissal (Exhibit 3). The Plaintiff then requested the Decision Review Board to review the Administrative Law Judge's dismissal.

> (e) On July 9, 2011, the Decision Review Board denied the request to review the Administrative Law Judge's dismissal (Exhibit 4). The Decision Review Board Notice did not provide for further appeal.

In his January 28, 2011, Notice of Dismissal, Administrative Law Judge John Edwards explains that the Commissioner's regulations allow for the dismissal of a request for hearing based on the doctrine of *res judicata* if the Administration has made a prior determination on a claim on the same facts and issues and that determination has become final. (Doc. 9-1, PageID # 37.) From there, he recounts the following history, which includes a claim advanced even before the 2003 and 2008 claims.

Ross filed a claim for Title II disability insurance benefits in both 2001 and 2003. As related in Mr. Halse's affidavit, Ross's insured status under Title II had expired on December 31, 1994. (Id.) These earlier claims were both denied on the ground that Ross engaged in substantial gainful activity after the date on which he alleged an onset of disability and Ross did not request review of those decisions within the permitted timeframe. (Id.) In the decision on the 2003 claim, the state agency made its decision on *res judicata* grounds. Thereafter, Ross filed the current claim in 2008. Initially, the claim was denied on April 17, 2009, and upon reconsideration on August 28, 2009. Ross requested a hearing and got one. Following that hearing, an administrative law judge issued a decision on September 20, 2010, finding that Ross had engaged in substantial gainful activity after his alleged onset date. (Id.) The Decision Review Board elected to review and it found that it was error for the Judge to have conducted a hearing because the claim should have been dismissed as *res judicata*. (Id.) On remand, Judge Edwards made the following assessment and dismissed Ross's request for a hearing in a decision dated January 28, 2011:

> The undersigned has considered whether this determination should remain final and finds no reason why it should not. None of the conditions for reopening set forth in 20 CFR 405.601 is present in this case. Accordingly, the previous determination remains final and binding.
>
> The question therefore becomes whether the same facts and same issues are involved. The undersigned has compared the evidence considered in reaching the previous determination with that relating to the claimant's current claim. Based on this comparison, the undersigned finds that no new and material evidence has been submitted and that there has been no change in statute, regulation, ruling or legal precedent concerning the facts and issues ruled upon in connection with the previously adjudicated period. Additionally, as already stated, the claimant's insured status expired prior to the previous determination. Accordingly, the claimant's rights on the same facts and on the same issues are involved and the doctrine of *res judicata* applies.

(Id., PageID # 37-38.) On February 18, 2011, Judge Edwards issued a notice denying Ross's request that the Judge vacate the dismissal of his claim. (Id., PageID # 42.) On June 9, 2011, the Decision Review Board denied a further request for administrative review of the Judge's decision. (Id., PageID # 43-44.)

### Ross's Allegations

In his complaint, Ross makes the following allegations:

\*\*\*\*

7. Plaintiff does not understand how an appropriate *res judicata* analysis can occur when the subsequent decision of 1/28/11 has no prior record whatsoever to compare to. Asserting that an evidentiary comparison was made does not make it so. With no prior record, such a comparison is impossible. Accordingly, the decision violates Plaintiff's constitutional right to due process. Defendant issued the decision without appropriately applying the Defendant's own regulations and policy regarding *res judicata*. 42 USC §1983.

8. Plaintiff, under *Bowie v. Astrue*, Civ No. 08-428-P-S, Recommended Decision on Motion to Dismiss, 5/7/09, "raises a colorable claim of denial of . . . due process," p. 5, and Defendant is required to be "bound by his own rules and regulations," p. 7, which he did not do here.

9. Finally, SSR 91-5p was not considered much less applied, though raised by Plaintiff, No. 8E, to the ALJ, and to the DRB on 3/24/11.

4

(Doc. 1.)

## Ross's Evidence

Ross has filed one document authored by a case consultant at Maine Disability Determination Services on March 21, 2003. It is a "report of contact" bearing a subject line of "Subsequent DIB [disability insurance benefit] Claim Jurisdiction." (Doc. 12-1.) Ross explains that this document is the Exhibit 9E discussed in his memorandum. In it, the case consultant wrote:

> Subsequent DIB [disability insurance benefit] claim filed 3/14/03 involves the same issues as previous DIB claim filed 5/4/01, namely AOD [alleged onset date] 1/1/93 and DLI [date last insured] 12/31/94. Prior DIB claim was a technical disallowance (SGA [substantial gainful activity] denial code N2 per MBR) on 5/7/01.
>
> We cannot agree with the page 8 discussion of SSA-821[1] dated 3/17/03, as it does not square with instructions re: UWA [unsuccessful work attempt] (see POMS[2] DI 11011.215 below). And it probably does not square with the SGA determination rendered on prior disallowance 5/7/01.
>
> Please review and take action you deem appropriate (possibly FO [Field Office] *res judicata* disallowance?) on subsequent claim. See PCACS [Processing Center Action Control System] query in green section which shows prior DIB folder 70111 in FARC [Federal Archives and Records Center] location. Thx.

(Id. (bracketed alphabet-soup-translation supplied).)

---

[1]  SSA-821 is an SSA form titled "Work Activity Report," available online, albeit in a form dated 2009. Claimants are meant to indicate work activity on this form, which work activity, if any, was performed after a date specified on the form by SSA. Page 8 of the form is "for SSA use," and it appears that someone at Maine Disability Determination Services disagreed with someone else about a "UWA" assessment. This form is obviously meant to facilitate the evaluation of whether a claimant has engaged in substantial gainful activity subsequent to the date last insured or the alleged onset date for purposes of step 1 of the sequential evaluation process. Ross argues that Exhibit 9E suggests that the substantial gainful activity evaluation was in error, but it is as likely that the author of this form took issue with an unsuccessful work attempt notation in the form 821 for the 2003 claim. This exhibit, in my view, does not move the jurisdictional inquiry in any particular direction.

[2]  SSA's Program Operations Manual System, also available online. The cited subsection appears to have been abandoned or superseded, but based on the current system, it appears likely that it related to the use of collateral estoppel for claims decisions.

**DISCUSSION**

The Commissioner contends that this court lacks subject matter jurisdiction over the plaintiff's claim, which amounts to a request for dismissal of the case pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. When a defendant moves to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of demonstrating that subject matter jurisdiction exists and the Court may consider evidence submitted by either party in order to determine the jurisdictional question. Aversa v. United States, 99 F.3d 1200, 1209-10 (1st Cir. 1996). The Court should endeavor to resolve challenges to its exercise of jurisdiction without addressing the merits. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998); Donahue v. City of Boston, 304 F.3d 110, 117 (1st Cir. 2002).

The Commissioner maintains that the Court must dismiss Ross's action because the Court lacks jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405. Section 405(g) of the Social Security Act provides in its initial sentence:

> Judicial review. Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Thereafter, section 405(h) reads: "No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided."

The Commissioner explains that his decision on Ross's 2008 claim was not "made after a hearing" and therefore is not subject to judicial review. (Def.'s Mem. at 1, Doc. No. 9.) The Commissioner also explains that he and his Administration are immune from suit except to the

limited extent that Congress has waived immunity under section 405(g) for claims arising under the Social Security Act. (Id. at 3.)

In Califano v. Sanders, 430 U.S. 99 (1977), the Supreme Court considered whether a district court could exercise jurisdiction over a claim for judicial review of an administrative decision "not to reopen a previously adjudicated claim for social security benefits," whether under section 405(g) of the Social Security Act or under the Administrative Procedures Act (APA). Id. at 100. Indeed, much as the instant case, the claimant in Sanders was reasserting a claim the Administration had denied years earlier and which he did not pursue to exhaustion, and he sought judicial review of a decision that his reasserted claim was barred by the doctrine of *res judicata* and should not be reopened. Id. at 102. The district court dismissed the claim, but the Court of Appeals reversed and held that the court could review the decision under the APA. Id. at 103-104. The Supreme Court reversed. It held that neither the APA nor the Social Security Act authorized the district court to review the social security benefits determination. Id. at 107-108. The Court explained that "the opportunity to reopen final decisions and any hearing convened to determine the propriety of such action are afforded by the Secretary's regulations and not by the Social Security Act." Id. at 108. "[A]n interpretation that would allow a claimant judicial review simply by filing - and being denied - a petition to reopen his claim would frustrate the congressional purpose, plainly evidenced in § [4]05(g), to impose a 60-day limitation upon judicial review of the Secretary's final decision on the initial claim for benefits." Id. According to the Court: "Congress' determination so to limit judicial review to the original decision denying benefits is a policy choice obviously designed to forestall repetitive or belated litigation of stale eligibility claims" and the judicial duty "is to respect that choice." Id. at 108.

An appreciable line of first circuit precedent follows, including presentations that are not easily distinguishable from Ross's presentation.  See Torres v. Sec'y of HHS, 845 F.2d 1136, 1138 (1st Cir. 1988) ("Absent a colorable constitutional claim not present here, a district court does not have jurisdiction to review the Secretary's discretionary decision not to reopen an earlier adjudication."); Dudley v. Sec'y of HHS, 816 F.2d 792, 795 (1st Cir. 1987) ("It is well-settled that, because the 'final decision of the Secretary' refers to the Secretary's initial substantive decision on a claim for benefits, § 405(g) 'cannot be read to authorize judicial review of alleged abuses of agency discretion in refusing to reopen claims for social security benefits.'") (quoting Sanders, 430 U.S. at 107-08);  Rios v. Sec'y of Health, Educ. and Welfare, 614 F.2d 25, 26 (1st Cir. 1980) (applying the rule even when the decision to deny reopening and to apply *res judicata* issued after a hearing because the final decision referred to in the Act is the initial substantive decision and because a "purely discretionary hearing . . . is not a 'hearing' within the meaning of § 405(g)").  Ross's request for judicial review of the Commissioner's decision to dismiss on *res judicata* grounds or of the decision not to reopen the long-bygone claim is, standing on its own, subject to dismissal under this line of authority.  There is nothing in Exhibit 9E that would override that outcome.

Ross seeks to get around the immunity obstacle by alleging a constitutional violation. His allegations on this point consist of (1) a contention that the *res judicata* decision was erroneous for lack of a proper record, arguing that this raises a due process concern;  (2) a citation to this Court's disposition in Bowie v. Astrue, No. 2:08-cv-428-GZS and (3) an assertion that he raised Social Security Ruling 91-5p as a ground for reopening his claim and that this ground was ignored by the Commissioner.  (Complaint ¶¶ 7-9.)

The first contention is, standing alone, a non-starter. A decision not to reopen a claim on *res judicata* grounds does not violate the due process clause. Cf. Weinberger v. Salfi, 422 U.S. 749, 772-73 (1975). Systems of barring stale claims are found in statutes, common law, and in administrative regulations and the enforcement of these systems does not generate a constitutional question whenever the claimant alleges that the denial of his or her claim was wrong on the merits. Here, the Commissioner viewed the reasserted claims as the same in all material respects to the initial claim because all were asserted well after the date last insured and the original decision was that Ross engaged in substantial gainful activity after that date. Perhaps the substantial gainful activity finding was erroneous. It does not follow that the Commissioner cannot enforce regulations related to stale or repetitive claims.

Ross's second contention, that his case is on par with the facts in Bowie v. Astrue, is not developed in Ross's memorandum in opposition (Doc. 10). I will not belabor the comparison, but simply relate the following fact from the Bowie case: "The plaintiff had not, in fact, 'miss[ed] the deadline to request a hearing,' . . . and so had no need to 'establish[] good cause for missing the deadline to request a hearing.'" 2009 U.S. Dist. Lexis 39460, *9, 2009 WL 1290765, *3. Ross has not developed a similar presentation.

Ross's third contention is that he suffered from a mental impairment that prevented his compliance with the Commissioner's regulations and prevented him from preserving his original claim through timely requests for administrative review and hearing. This kind of contention was also present in the Bowie case and is the only potentially viable ground for this Court to exercise jurisdiction and order a remand.

"[A] claimant suffering from mental illness raises a colorable constitutional claim when he asserts that his mental illness precluded him from litigating his claim because it prevented him

9

from proceeding from one administrative level to another in a timely fashion." Elchediak v. Heckler, 750 F.2d 892, 894 (11th Cir. 1985) (citing Penner v. Schweiker, 701 F.2d 256, 260-61 (3rd Cir. 1983); Parker v. Califano, 644 F.2d 1199, 1201-03 (6th Cir. 1981); Brittingham v. Schweiker, 558 F. Supp. 60, 61 (E.D. Pa. 1983); Kapp v. Schweiker, 556 F. Supp. 16, 20-21 (N.D. Cal. 1981)). Ross's complaint contains a limited allegation in this regard. Ross alleges that he "raised" Social Security Ruling 91-5p and that it was not considered. (Compl. ¶ 9.) He does not allege that he suffered from a mental incapacity that actually prevented him from understanding the procedures for requesting review. Nor does he allege that he was not represented in either of his prior claims.

Social Security Ruling 91-5p (S.S.A. July 1, 1991) is an interpretive ruling designed "to clarify our policy on establishing good cause for missing the deadline to request review." 1991 SSR Lexis 5, *1, 1991 WL 208067, *1. It is offered "to avoid the improper application of res judicata or administrative finality when the evidence establishes that a claimant lacked the mental capacity to understand the procedures for requesting review." Id. Pursuant to the SSR 91-5p:

> When a claimant presents evidence that mental incapacity prevented him or her from timely requesting review of an adverse determination, decision, dismissal, or review by a Federal district court, and the claimant had no one legally responsible for prosecuting the claim (e.g., a parent of a claimant who is a minor, legal guardian, attorney, or other legal representative) at the time of the prior administrative action, SSA will determine whether or not good cause exists for extending the time to request review. If the claimant satisfies the substantive criteria, the time limits in the reopening regulations do not apply; so that, regardless of how much time has passed since the prior administrative action, the claimant can establish good cause for extending the deadline to request review of that action.

Id., Lexis *4-5, WL *2. As a consequence of this Ruling, mentally incapacitated claimants who pursued a disability claim without assistance from a legal representative may obtain relief from

all deadlines if the evidence demonstrates that a mental incapacity prevented them from complying with regulatory deadlines. Unfortunately, Ross's telegraphic allegation in paragraph 9 of his complaint does not contain sufficient factual information to generate a plausible inference that he was not represented in regard to his 2001 or 2003 claims or that he had a mental incapacity that prevented him from timely requesting review. Moreover, even if he had alleged these facts to properly "state a claim" for purposes of Rule 12(b)(6), the Rule 12(b)(1) jurisdictional inquiry envisions some evidentiary presentation and Ross has not carried his burden to demonstrate the facts necessary to allow for an exercise of jurisdiction on constitutional grounds.[3] As a result, the Court lacks a reliable basis upon which to exercise jurisdiction to remand for further proceedings and should grant the Commissioner's motion to dismiss the complaint.

## CONCLUSION

For the reasons set forth above, I RECOMMEND that the Court GRANT the Commissioner's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 9).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

January 20, 2012

---

[3] Had he done so, I would have recommended to the Court that it overlook the deficiencies in the complaint. As it stands, however, both the allegations and the evidentiary showing are deficient.